We have presented three issues in our joint brief. For purposes of this oral argument, we are going to focus on the prosecutorial misconduct issue, unless the Court has any questions on the other two issues. Which issue? I just didn't hear you. The prosecutorial misconduct issue. Your Honors, our brief has said that multiple instances of prosecutorial misconduct on closing statements was cumulative error and denied the appellant's due process. The case, this trial, lasted four days. On the fourth day, we resumed at 9.15 in the morning. The judge, Honorable Judge Jorgensen, had instructed the jury first when we first got there. She did give the standard jury instruction, one being what counsel says is not arguments, another being the standard reasonable doubt instruction. The prosecutor had his first initial closing. It lasted about 22 pages of the briefs. Then Mr. Panzarella and I each had a closing statement on behalf of our clients. The morning session ended at approximately noon. We came back. You were trial counsel. You and your co-counsel there were trial counsel as well. That is correct, Your Honor. We were both trial counsel. We resumed at 1.15, and the government was able to do its rebuttal close at that time. There were several objections made to various portions of the closing statement made by the government. Some of those objections were just overruled. Other objections were not ruled on. There were specifically two that we had put in our brief that were never ruled on by the court when we made those. There was no curative instruction given by the court regarding any of those. The standard answer was this is argument. We did move for a mistrial at the end of the case, and that was also denied by the judge. I think it's important to look at what misconduct occurred on the first closing that the government gave versus a rebuttal closing, because obviously on the rebuttal, appellants have no opportunity to be able to respond to what is being said. On the first close, there were a couple instances of burden shifting. One of the more egregious instances of burden shifting, in our opinion, was when the prosecutor tried to argue that we did not try to approximate the conditions of the sun and the car. And as the court is aware from our briefs, the issue of whether or not the police officers could actually see in the vehicle to identify the people in the vehicle was a major factor in our case. I don't understand why that's an improper comment. Your argument was whatever it was about the sun and the moon, and they come back and say, well, if that's important, why doesn't the defense offer some evidence about it? What's wrong with that? Well, Judge, it was particularly egregious because we had proposed and had disclosed an expert by the name of Tim Bright. Mr. Bright was an expert accident reconstructionist. The judge on, I believe it was the second day of trial, had excused the jury to hear from Mr. Bright because the government was objecting to him being able to testify. He had gone out and actually had done his own investigation regarding the angle of the sun in the car. We were not able to use the actual car, but he had a truck, an avalanche that was very similar in years, that he had gone out at 5 o'clock in the morning and had observed what the sun conditions were. Judge Jorgensen had excluded him from testifying as to that fact. She found that he was not an expert in this area. Also, Judge, we had submitted some photographs showing a person. Okay, so now you're saying that they suggested that you should have come forward with evidence when you had, but the judge had excluded it. That is correct. I don't recall seeing that in the brief. Your Honor, we can definitely supplement that. That was part of the question. Supplementing it? I mean, it should have been there. I mean, if you don't raise it, then that's not the argument that you're entitled to go with. Well, and I do apologize if that was out of our brief, because that was really the big issue about the burden shifting in that case, because I would agree that, you know, the government can definitely point out the things that we did not do that they think we should have done, but that's specifically because of the fact that our expert had been precluded. Now, she did not preclude him entirely. She said that he could come and testify regarding distances and the distance that the vehicles would be traveling in an approximate space, but she precluded him from testifying regarding the position of the son and what could or could not be seen by the officers at that time of day. What's the next worst thing she allowed, Judge Jordan? Well, Judge, we had on rebuttal close, there were some facts that were argued not in evidence, and there was a reasonable doubt instruction that the government had told the jury. The facts not disclosed in evidence was the prosecutor's common sense reason why drug smugglers do not bring uninvolved persons into drug smuggling operations. And this was actually an overhead that he had put up on the overhead so that it was in front of the screens on all the jurors. The reason why we felt this was most egregious is because Mr. Panzarella had proposed to have an expert witness, Alex Vasquez, discuss the modus operandi of drug dealers. We anticipated that this was going to be an issue. We discussed this at the evidentiary hearing. We also discussed it during the trial. The government had told the judge and told us that he was not going to go into the modus operandi of drug smugglers. And so based upon that, we had not called our witness, Mr. Vasquez. Then we have the very end of the rebuttal close when the government presents these things that were not discussed at all during the trial. It was agreed upon by the party that we were not going to get into the modus operandi of drug smugglers. In addition to the fact that we were not going to get into it, a couple of the comments on his list, we believed first of all commented on Mr. Acuna's right to remain silent because he had invoked when the police officers had first arrested him. And the government told the juries, well, if there was an innocent, uninvolved person, naturally they would have said something to the government, to the officers right away. They would have told them who, what, when, why. And that's the reason they don't want uninvolved people in drug smuggling operations, which I believed an objective was a direct comment on my client's right to remain silent. Also, Your Honor ---- How would you propose the government make the argument it's trying to make? I think, frankly, when I read this, I said the same thing to myself before I got to the argument, which is that drug dealers, drug smugglers don't ordinarily pick up uninvolved people for fear that they're going to talk because they don't know who they're picking up. Now, how does the government make that argument without having the implication that you're objecting to, that your defendant should have talked? Well, Judge, I think had the government gone into that in its opening or its case in chief and allowed us to put on our expert witness to say, you know what, that's not always true, this is not always what drug smugglers do, that would have been different. I think they could have gone into it. Well, it's beginning to sound again like your real objection isn't to the argument that was made but to the failure to admit evidence that you were trying to admit that, for whatever reason, didn't get admitted with regard to what drug dealers do or drug smugglers do. Well, I definitely think our argument is twofold because of the fact that we had agreed not to get into this and had not presented any testimony on it. Also, it's arguing facts that are not in evidence. Is there anything in the record that corroborates what you're saying, that you had agreed about something? Yes, Your Honor, and we have cited it in our brief. I don't have it in front of me, but I'm sure Mr. Panzarella can tell you exactly where. You're saying that the record contains an agreement that in closing arguments and anything else there would be no discussion of the, well, basically the vouching issue and the implication about the right to remain silent. All of that's discussed in this document? Judge, not the specifics. And actually, I do have the site. It was in the motion hearing, the transcript, pages 52 to 53. This is the ER or the SER? That is the evidentiary hearing, the motion hearing. But, I mean, for purposes of our record, what are we looking at here? You mean in the excerpts? Supplemental excerpts of record. Where would I find this? You know what, Judge, Mr. Panzarella can go into that. I don't have it in front of me. I just have the original transcript place. Okay. Did you want to pass the baton to Mr. Panzarella? Yes, actually, I do. Thank you, Your Honor. Good morning. Good morning, Judges, counsel, and may it please the Court. Ray Panzarella for Appellant Juan Diego and Gulo Mendoza. And to follow up on Ms. Bond, where she was talking about is in our appellant brief, we cite to that page, well, various pages, but it starts at page footnotes, 63 at page 31. Of what document? Ends up being referred to. Unfortunately, in our footnote, it refers to motions hearing transcript of April 28th at page 4849. Unfortunately, that was not submitted as part of our. So it's not part of the record as far as what we're looking at. Fortunately, it is. And as much as the government submitted it, it's part of its appendix. So it's in the appellee appendix at page 7172. And if you look at that, the government's. 7172? Yes. There's a clear discussion between myself and Mr. Jerry Albert, who was the AUSA. And by the way, the counsel in Babbage's that this Court may be familiar with, 98. And the discussion involved whether or not the question the Court asked. At the end of this argument that we're having, his motion to eliminate or preclude my expert, a former DEA agent, a modus operandi, the Court said, well, let me ask you, are you planning on presenting testimony in your case in chief about the modus operandi of marijuana traffickers? And she asked Mr. Albert. He said, I am not. That's at page 71 at the bottom. Not in my case in chief. So he didn't say he wouldn't present it in closing. I'll grant him that. Okay. And that's what we're talking about here, isn't it, is the closing argument? Well, yes. We are talking about that. But the fact is, my argument and our argument is that this was basically an argument based on facts not in evidence. It's argument based on theory. How is common sense facts not in evidence? You can't make the argument without having any evidence. It's an argument that if it requires evidence, the jury can disbelieve. But if the jury is persuaded, it's because it may not require evidence. And, Judge, yes. And I know this Court in Pineda held that that was an acceptable argument. And in Pineda, the difference is that the government argued that that came close, this Court said, to being improper argument. And that's when it made inferential arguments about how unreasonable it is to think that someone would actually hide more than $30,000 worth of merchandise inside a car as an unwitting kind of courier defense is what was going on there. And this Court said that that argument was not improper. It was not impermissibly suggestive. But in that case, the government rested on a permissible theory of the case for which evidence and it could be, not only could it be, it was introduced. And in this case, that's the difference. We have closing argument without any evidence introduced. So I think this Court itself. But the closing argument to be persuasive apparently doesn't require any evidence. It's an argument to common sense. Now, you're saying, in effect, I guess, that there's evidence that could have contradicted it that you didn't present. But I don't see that argument being made in the brief, and I don't see that argument being consistent with the agreement that you articulated to us a minute ago, because the government didn't present any modus operandi evidence as part of its case in chief. Rather, it argued in closing argument that this story doesn't make any sense. Drug smugglers don't pick up innocent bystanders because if they do, then the bystanders are going to squeal when they get arrested. I understand the logic of that. It doesn't require any evidence to be persuasive to me. What's the problem? Judge, yes. And to a certain degree, I understand the argument that common sense is permissible argument for the government. However, unlike this Court's case in Pineda, there was no facts and evidence. There's no basis for him to argue. I don't think this Court would condone argument without some basis in the fact. The basis in the fact is the defendant's story didn't make any sense from the government's perspective, and frankly, it didn't make much sense from my perspective either. That doesn't happen in my experience. So I'm having – I still don't see what the problem is. Okay. And, you know, even in our district, we've had judges say, okay, you can argue this case, counsel, but here's what happened. In this case, Mr. Alvin went two or three steps further. He came up with this chart, put it on the Elmo, without any notice to us. Another thing this Court has often looked at is the timing of such presentation. This was in rebuttal, of course, when we have sat down and we're done without any disclosure, and not only no disclosure, but his vouching to the Court he would not present any evidence to any of the witnesses. Counsel, can I – I don't want to interrupt your train of thought, but I must confess, I – the evidence in this case seems so overwhelming. Why isn't this harmless error? If everything you say and your co-counsel says is true, why isn't this harmless error? Well, that's a good question, Judge, and I'm glad you asked that because you have to look at both the appellants. And in my case, Mr. Angulo-Mendoza, I would disagree. The evidence is not overwhelming. In fact, not only is it a close case, but I think but for the acts of the government, this is a not guilty case. We're looking at a mere presence case. And that's why I supplemented with this Court's decision in Tang. A mere presence case where they follow him with sirens and so on. They see these guys run into the tree. They identify them right away. Let's look how that started. We have basically someone who's picked up on the side of the road, Mr. Angulo-Mendoza. Well, that's the allegation that you're saying. And that's in evidence. The only evidence – there's no evidence by the government to dispute that. The only evidence introduced at trial. Other than the common sense issue that Judge Clifton has raised in argument. And there's a difference between argument and evidence, and you put in your argument in the closing argument, don't you? That's correct. So what's the matter with that? Well, again, the evidence in this case was that there was – Mr. Angulo-Mendoza was picked up on the side of the road, and this is through testimony of the appellant Acuna, that he was looking dehydrated and exhausted, asking for water and food. They picked him up, and he ducked down. Thereby, when the officers see two individuals in that vehicle, it's correct. They see two individuals, a driver and Mr. Acuna. The vehicle does give chase. And these are through tinted windows at 60 miles an hour on the reservation, early morning hours. The vehicle does give chase and ends up crashing to boulders and trees. Dust is flying. It's the desert. And when these gentlemen flee, the police later say, we have the two that were in the vehicle. Well, what's true is we believe the driver got away, and the testimony was to that effect. And the fact is that Mr. Angulo-Mendoza was picked up without knowing what was in that vehicle, came to know about it, and was unable to get down. He was getting a ride to the town where he intended to turn himself in to Border Patrol. That's what he intended to do. I see you're out of time. Thank you very much. Thank you. We'll hear from the government. Thank you. May I please court? My name is Bruce Ferg, Assistant United States Attorney on behalf of the government in this case. I can clear up a couple of questions that have been raised or comments that have been made. First of all, Ms. Bond suggested that there were no curative instructions given in this case. However, as I pointed out in my brief, a curative instruction doesn't have to be given at the instant that the alleged error takes place. That's the whole purpose of the general instructions that the court gave before the arguments were ever conducted here, is to prepare the jury to assess things appropriately. So, in fact, there were curative instructions preemptively given. Secondly, with regard to this question of the common-sense argument and what was supposedly promised or not promised, in my answering brief at page 33, I have provided the court with directions to the S.E.R. And as I believe Judge Clifton noted, there was no representation that the government, quote, would not go into this kind of evidence, what was specifically stated, or this kind of operation. It simply said we're not presenting any evidence. It did not exclude making reasoned arguments, reasonable inferences. And, therefore, there was no misrepresentation. And the S.E.R. references that I give you there point out that, in fact, when this was simply an agreement, no evidence, but that didn't have anything to do with limitations on the closing arguments. Basically, what we have here is a series of reasonable arguments, none of which was out of bounds. We have facts being argued. We have reasonable inferences being argued. We have a vernacular construction or restatement of a reasonable doubt instruction, which did not deviate from what the essence of this court's standard instruction is. And the bottom line is we have overwhelming evidence. We have these two people, both of whom say it was really the little man who wasn't there, Luis, who just coincidentally also was wearing a red shirt that supposedly did all these things. But we had direct evidence from the officers involved that this vehicle fled without reason. They were simply watching it. And, suddenly, the wicked flee when no man pursues. And it turns into a pursuit. And then Officer McGill pulls up alongside, and he looks directly into the window and sees Mr. Acuna in his red shirt. And then he later on arrests him and identifies him in court. And he also sees this other man who, although strangely was just picked up out in the desert all by himself and had nothing to do with it, flees simultaneously out the very same door with Mr. Acuna and is arrested a few minutes later with him. So we have, in fact, a case of overwhelming evidence against both of the defendants. Now, so far the discussion has been about the arguments. I went into those in great detail in the brief. You really have to parse it, because some were objected to, some were not. So there are various standards of review. But I laid it out there as well as I could. We also have the same. Roberts. Let me pick up on one in particular. And that has to do, and it was covered in your brief, about the question of whether the government commented on the post-arrest silence of the defendants. In particular, I think it was Mr. Acuna. And in your brief on page 34, you actually quote the government's comment. So I'll let you find that, because I'll point to the part that does give me some concern, which is the last sentence. The argument is that, gee, you don't pick up uninvolved persons because they're going to talk when they get picked up. But the last sentence says, think about that when you think about these good Samaritan types that are supposedly involved in this case. Why shouldn't we view that as a challenge to the defendants based on their own failure to testify? Rather, on their failure to speak after arrest, which they have the right not to do, and say, hey, I wasn't involved. I'm not involved in this. Because even though the very sentence that you quote there points back to what the whole theme of the government's argument was, which, who was the good Samaritan? It was not either of these individuals who supposedly both were picked up by the good Samaritan, Luis, who vanished into thin air. And so rather than focusing on the- But the apparent proof for that is that they didn't behave the way an uninvolved person would by telling the police, gee, I don't know what's going on here. I'm not involved. Their actions spoke louder than words. But the problem is that their actions, the action that you're citing appears to be their action in exercising what is their right not to speak to the police. But all of the cases that this Court has had where it talked about comments on silence, there was something that was done to focus particularly on the fact that a defendant was not making a statement. And this is not. This is number three or four in a whole list of seven different common-sense reasons. There was no name given. There was no particular pointing at the defendants. The context was look back at the incredibility of this overall story because there's no Luis. Is it sensible that there really is a Luis is what it's coming down to? So it's not a comment on silence so much as a comment on the evidence or lack thereof in general. Let's assume for a moment that there was a violation. Does the harmless error standard apply nonetheless if the evidence is overwhelming? Yes, it does. I think that I stated that in my standards of review. But if I did not, I can supplement. But that definitely is true. It's like any other kind of error that occurs in a trial. There are very few that are structural and automatically require reversal. And this is simply not one of them because the Court can assess, looking at all of the evidence, did it affect it or not, and it simply did not. Unless the Court has questions about any of the other arguments or ---- Thank you, Mr. Ferg. You folks used up your time, so we'll deem the matter submitted at this point. Thank you very much. Good morning to the Court of Appeals. All three counts.
judges: Silverman, Clifton, Smith M.